USDC SCAN INDEX SHEET










```
MAM     12/27/05    15:47
3:04-CV-01035   ART ATTACKS INK LLC V. MGA ENTERTAINMENT
*187*
*O.*
```

42530

FILED
05 DEC 27 PM 1:38
CLERK, U.S. DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

[signature] DEPUTY

UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ART ATTACKS INK, LLC, a California limited liability company,<br><br>           Plaintiff,<br><br>v.<br><br>MGA ENTERTAINMENT, INC., a California corporation; Isaac Larian, an individual; and DOES 1 through 200, inclusive,<br><br>           Defendants. | Case No. 04cv1035-J (BLM)<br><br>ORDER GRANTING IN PART AND DENYING IN PART PLAINTIFF'S MOTION TO COMPEL [DOC. NOS. 164-66]; GRANTING DEFENDANTS' MOTION TO STRIKE PLAINTIFF'S EVIDENCE SUBMITTED WITH PLAINTIFF'S REPLY IN SUPPORT OF PLAINTIFF'S MOTION TO COMPEL [DOC. NO. 185] |

    On November 9, 2005, Michael Quade, Amy Allemann, and Ed Kreusser, Esqs., counsel and former counsel for Plaintiff, respectively, and Paula Ambrosini, Esq., counsel for Defendants, contacted the Court to discuss a potential motion to compel that Plaintiff intended to file. Because it quickly became apparent that the parties' dispute could not be resolved without formal briefing, the Court issued a special briefing schedule, taking the motion under submission pursuant to Civil Local Rule 7.1(d)(1). Doc. No. 162. On November 17, 2005, Defendants filed an ex parte application for an order allowing three additional days in

which to file its opposition to Plaintiff's motion. Doc. No. 168. This Court granted Defendants' request on November 22, 2005. Doc. No. 170.

Accordingly, Plaintiff filed the instant motion to compel on November 14, 2005. Doc. Nos. 164-66. Defendants filed their opposition on December 1, 2005. Plaintiff filed its reply on December 8, 2005. On December 12, 2005, Defendants filed objections to and a motion to strike the evidence submitted with Plaintiff's reply.

Having considered the briefing filed by the parties and the applicable law, and for the reasons set forth below, Plaintiff's motion is **GRANTED IN PART** and **DENIED IN PART**. In addition, Defendants' objections to and motion to strike Plaintiff's evidence submitted with Plaintiff's reply in support of its motion to compel is **GRANTED**.

## LEGAL STANDARD

The federal rules generally allow for broad discovery, authorizing parties to obtain discovery regarding "any matter, not privileged, that is relevant to the claim or defense of any party," and "[f]or good cause, the court may order discovery of any matter relevant to the subject matter involved in the action." Fed. R. Civ. P. 26(b)(1). Relevant information for purposes of discovery is information "reasonably calculated to lead to the discovery of admissible evidence." Brown Bag Software v. Symantec Corp., 960 F.2d 1465, 1470 (9th Cir. 1992) (citation omitted). District courts have broad discretion to determine relevancy for discovery purposes. See Hallett v. Morgan, 296 F.3d 732, 751 (9th Cir. 2002). To the extent that the discovery sought is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive," the court is directed to limit the scope of the request. Fed. R. Civ. P. 26(b)(2). Limits should also be imposed where the

burden or expense outweighs the likely benefits. Id. How and when to limit discovery in this way, however, remains within the court's discretion.

## DISCUSSION

### A. Plaintiff's Motion to Compel

Initially, Plaintiff argues that the numerous objections[1] Defendants advance in response to discovery are not only improper, but also evidence Defendants' alleged bad faith. Plf's Mem. at 3-4. In support, Plaintiff observes that because it obtained leave to amend its complaint after serving its discovery requests, the pleadings are now settled, and as such, Defendants must produce complete and detailed discovery responses. Id. Plaintiff also contends that Defendants' alleged failure to (1) set forth their objections with specificity, (2) to explain the manner in which each request is irrelevant, and (3) to state the manner in which a given request is burdensome, exhibits not

---

[1] Although Plaintiff concedes that Defendants tailor their discovery responses and objections on a request by request basis, it notes that the objections to all requests are, in significant part, identical. Plf's Mem. at 3. Specifically, Defendants object to Plaintiff's discovery on the grounds that (1) the pleadings are not yet settled, and therefore requiring responses from Defendants before that time would be premature, unduly burdensome, and oppressive, (2) the information sought is neither relevant to the subject matter of this litigation nor reasonably calculated to lead to the discovery of admissible evidence, (3) it seeks information the disclosure of which implicates the rights of third parties to protect private, confidential, proprietary, or trade secret information, (4) it seeks confidential, proprietary, or commercially sensitive information the disclosure of which would be inimical to Defendants' business interests, (5) it seeks information in violation of privacy rights, (6) it calls for the disclosure of information protected by attorney-client privilege, other privilege, or the work product doctrine, and (7) it prematurely seeks information that may be the subject of expert witness analysis and testimony. Id.; see also Kreusser Decl. at Exs. B-D.

only Defendants' lack of compliance with the Federal Rules, but also Defendants' bad faith. Id. at 4. Moreover, Plaintiff maintains that by denying Defendants' motion to bifurcate liability and damages [Doc. No. 110], the Court has already ruled that Plaintiff is entitled to the discovery at issue.

When Plaintiff finally addresses the merits of its motion, Plaintiff divides the disputed discovery requests into four specific categories: (1) foreign earnings and profits with regard to BRATZ, see Kreusser Decl. at Ex. B, Doc. Reqs. 8-9, (2) "Best Friends" related earnings and profits, see id., (3) documents and information related to Defendants' intent to infringe upon the intellectual property rights of others, see id. at Ex. B, Doc. Req. 21, and Ex. C, Rogs. 15, 17, and (4) attendance of Defendants' employees at Southern California county fairs, see id. at Ex. D, Rog. 13. The Court will address each of these categories, and the arguments advanced by both parties, in turn.

### 1. Extraterritorial Sales, Royalties, or World-Wide Earnings and Profits Related to BRATZ

Plaintiff argues that Defendants' world-wide earnings and profits are not only discoverable under a variety of theories, including constructive trust and unjust enrichment, but also are relevant to both liability and damages. Plf's Mem. at 5, 7-8. With regard to liability, Plaintiff claims that world-wide sales and revenue are relevant to both market saturation "as relates to likelihood of 'reverse' confusion," and unwarranted public perception that Plaintiff has allegedly "pirated" the likeness of Defendants' BRATZ products. Id. at 7. Plaintiff also contends that the requested information is relevant to damages in that it will assist in measuring gross sales of and profits accumulated from Defendants' BRATZ product line. Id. In support, Plaintiff references

the Court's order denying Defendants' motion to bifurcate issues of liability and damages, which provides that Defendants' "sales totals as well as its advertising and marketing budget will play an overlapping role in resolving the damages issue and reverse confusion liability." Id. at 8; see also Doc. No. 110 at 8. Finally, Plaintiff claims that despite Defendants' arguments to the contrary, both the Lanham Act and United States copyright law enable this Court to exercise jurisdiction over and to compel discovery related to Defendants' foreign conduct. Plf's Reply at 2-3, 5-6.

Although acknowledging that they inadvertently produced to Plaintiff both domestic and foreign sales figures related to their BRATZ product line,[2] Defendants contend that neither trademark nor copyright law provide any basis for further compelling the disclosure of royalty income received from their foreign licensees. Defs' Opp. at 5. For example, Defendants explain that under the Lanham Act, this Court has no jurisdiction to reach foreign conduct, and therefore cannot compel discovery related to that conduct. Id. at 6. Defendants also argue that the limited exception enabling a district court to exercise such jurisdiction is inapplicable in this case. Id. at 6-7. Similarly, Defendants maintain that with one narrow exception, allegedly inapplicable here, United States copyright laws have no effect beyond this country's borders. Id. at 7-8. As such, Defendants insist that this Court's lack of jurisdiction under copyright law also precludes it from compelling the requested discovery. Id. at 8.

With regard to trademark law, the Supreme Court has interpreted the

---

[2] Defendants highlight that this oversight was brought to the attention of Plaintiff's counsel immediately—before the instant motion was filed. Defs' Opp. at 1 n.3.

jurisdictional scope of the Lanham Act to provide a "broad jurisdictional grant" that extends to "all commerce which may lawfully be regulated by Congress." Steele v. Bulova Watch Co., 344 U.S. 280, 284 (1952). Moreover, "Congress has the power to prevent unfair trade practices in foreign commerce by citizens of the United States, although some of the acts are done outside the territorial limits of" this country. Id. at 286. The Ninth Circuit, however, has developed an elaborate, three-prong test of subject matter jurisdiction when infringing acts occur in a foreign nation: "(1) there must be some effect on American foreign commerce; (2) the effect must be sufficiently great to present a cognizable injury to plaintiff[] under the federal statute; (3) the interest of and links to American foreign commerce must be sufficiently strong in relation to those of other nations." Ocean Garden, Inc. v. Marktrade Co., 953 F.2d 500, 503 (9th Cir. 1991). This third factor is divided into seven components, specifically (1) the degree of conflict with foreign law, (2) the nationality of the parties, (3) the extent to which enforcement is expected to achieve compliance, (4) the relative significance of effects on the United States as compared to other countries, (5) whether the explicit purpose of the infringement is to harm United States commerce, (6) the foreseeability of harm, and (7) the relative importance of violations within the United States. See id. at 503-04.

Similarly, with regard to copyright law, it is well settled that the Copyright Act does not apply extraterritorially. See Subafilms, Ltd. v. MGM-Pathe Commc'ns Co., 24 F.3d 1088, 1094 (9th Cir.) (en banc), cert. denied, 513 U.S. 1001 (1994). Under certain circumstances, however, a district court may allow the recovery of damages flowing from foreign exploitation of acts of infringement committed in the United

States. See Los Angeles News Serv. v. Reuters Television Int'l, Ltd., 149 F.3d 987, 992 (9th Cir. 1998), cert. denied, 525 U.S. 1141 (1999).

In support of this Court's exercise of jurisdiction, Plaintiff presents a lengthy list of "facts," complete with attached exhibits, which it contends demonstrate a right to discover and recover all extraterritorial sales, royalties, and world-wide earnings and profits related to Defendants' BRATZ products. However, despite having listed the factors incorporated in the Ninth Circuit's jurisdictional test, Plaintiff fails to specify clearly those alleged "facts" or evidence offered in support of each factor. Indeed, of those "facts" Plaintiff does enumerate, many are supported by incomprehensible documents, magazine articles, and television transcripts that reference statements allegedly made by Defendants or their representatives in a wide variety of contexts.[3] Nevertheless, Plaintiff does maintain that Defendants' alleged infringement has stifled its ability to capitalize on its works in foreign markets, despite being "well positioned" to do so. This unsupported contention alone, however, is not enough. While Plaintiff provides lengthy excerpts allegedly detailing Defendants' business strategy and foreign market activities, it fails to present any evidence

---

[3] Defendants object to and move to strike a number of the exhibits attached to the Declaration of Amy Elizabeth Allemann submitted concurrently with Plaintiff's Reply brief. Defs' Motion to Strike at 1. Specifically, Defendants object to exhibits 1, 2, 3, 4, "Exhibit A" to Exhibit 5, and 7 on numerous grounds, arguing that they are confusing, misleading, not properly authenticated, comprised of hearsay or multiple hearsay, and that their probative value is substantially outweighed by the danger of unfair prejudice. Id. Because the exhibits at issue fail to provide any support for Plaintiff's arguments, coupled with the fact that the exhibits are not properly authenticated in accordance with the Federal Rules of Evidence, Defendants' Objections to and Motion to Strike Plaintiff's evidence submitted with its Reply in support of its Motion to Compel is hereby **GRANTED**.

that its own foreign sales have been hindered by Defendants' foreign conduct. Moreover, Plaintiff also fails to reference clearly how Defendants' foreign sales and licensing activities either compete with or impact its sales at Southern California county fairs. As such, Plaintiff has failed to establish that this Court should extend its jurisdiction under the Lanham Act to compel the production of extraterritorial financial information.[4]

Plaintiff has equally failed to articulate specific reasons why this Court should construe United States copyright law to apply extraterritorially in this case. In particular, a review of Plaintiff's Second Amended Complaint, and specifically, its copyright infringement claim, reveals that Plaintiff has not alleged that Defendants' foreign earnings and profits are derived in any way from copyright infringement occurring in the United States. In short, the copyright infringement claim, as drafted, simply lists the elements of copyright infringement without further specification, and without reference to Defendants' foreign sales activities. As such, this Court cannot allow Plaintiff to obtain and peruse documents and information detailing Defendants' foreign financial activities simply because it has alleged copyright infringement in general.

In a final note, Plaintiff makes much of the Court's denial of Defendants' motion to bifurcate liability and damages. Doc. No. 110.

---

[4] Because the issue is not properly before it, this Court makes no determination regarding extending the Court's jurisdiction under the Lanham Act. The Court merely determines that based on the arguments, legal authority, and evidence presented to it, Plaintiff has failed to prove that the requested discovery is relevant to any pending claim or defense, that it is relevant to the subject matter of the instant dispute, or that there is good cause justifying its disclosure if it was relevant to the subject matter of the case.

Specifically, Plaintiff argues that because the Court indicated that Defendants' "sales totals as well as its advertising and marketing budget will play an overlapping role in resolving" damages, it is entitled to the discovery sought. Id. at 8. Defendants contend that the Court's ruling on their motion to bifurcate is entirely unrelated to the instant discovery dispute. Reviewing the order at issue, the Court instructed that advertising budgets, marketing expenditures, and the "overall sales and sales presence of the two companies" will be needed in order to determine damages. Id. at 8-9. Because it was not relevant to the motion it was deciding, the Court did not address Defendants' foreign versus domestic budgets, expenditures, and sales. As such, the order has no bearing on the instant discovery dispute.

In conclusion, and for the reasons set forth above, the Court finds that foreign financial documents and information related to the BRATZ product line are not relevant, and therefore, denies Plaintiff's motion to compel.[5]

### 2. Foreign and Domestic Sales, Royalties, Earnings, and Profits Related to "Best Friends"

Plaintiff claims that Defendants' refusal to produce foreign and domestic financial information related to their "Best Friends" product

---

[5] As a practical matter, Defendants maintain that they inadvertently produced to Plaintiff financial information reflecting foreign as well as domestic sales for the BRATZ product line. Plaintiff, in its moving papers, neither confirms nor denies such a production. To the extent that Defendants have already produced such information, the dispute with regard to BRATZ related foreign earnings and profits is moot. However, to the extent that Defendants have not already produced foreign financial documents, the applicable case law as explained above, and the fact that Plaintiff has failed to articulate clearly reasons why this Court should extend its jurisdiction to include Defendants' foreign conduct, mandate this Court's denial of Plaintiff's motion to compel.

line is improper because that product line was expressly incorporated in the Second Amended Complaint, including in the unfair competition claim. Plf's Mem. at 8-9; see also Doc. No. 113. Defendants argue that Plaintiff is not entitled to any financial documents or information, either foreign or domestic, attributable to this product line. Defs' Opp. at 9. Specifically, Defendants contend that nothing in the Second Amended Complaint gives Plaintiff any right to obtain profits from sales of such products as a remedy in this case.[6] Id. According to Defendants, the fact that Plaintiff instituted this action, claiming infringement of its intellectual property rights in the word "Brat" and in its "Spoiled Brat" images, does not endow Plaintiff with any right to obtain discovery of profits generated on a product line entirely unrelated to BRATZ simply because Plaintiff occasionally uses the phrase "Best Friends" in tandem with that word or those images. Id. at 10. In addition, Defendants note that because Plaintiff does not possess trademark rights in the phrase "Best Friends," the Lanham Act neither offers Plaintiff any relief nor provides any basis to justify discovery related to Defendants' "4-Ever Best Friends" products. Id. at 11.

As an initial matter, the "evidence" presented in support of Defendants' production of foreign financial information related to the

---

[6] Moreover, Defendants underline that Plaintiff does not claim any trademark rights to the phrase "Best Friends," that the phrase has acquired any secondary meaning or is uniquely associated with Plaintiff, or that Defendants' use of the words "Best Friends" or its "4-Ever Best Friends" products infringe any intellectual property Plaintiff owns. Defs' Opp. at 9. However, Defendants have not challenged the sufficiency of the allegations asserted in the Second Amended Complaint as they relate to this issue. The Second Amended Complaint repeatedly alleges that Plaintiff's copyright and trademark rights are violated by both Defendants' BRATZ and "Best Friends" or "4-Ever Best Friends" product lines. See Doc. No. 113 at ¶¶ 43, 44, 51, 58, 67, and 70.

"Best Friends" or "4-Ever Best Friends" product lines is identical to that identified with regard to the BRATZ products. As such, the Court finds that Defendants' foreign financial information related to the "Best Friends" or "4-Ever Best Friends" product lines is not relevant for the same reasons explained above, and therefore denies Plaintiff's motion to compel such *foreign* financial information.

Plaintiff's discovery requests related to the "Best Friends" or "4-Ever Best Friends" products' domestic earnings and profits, however, are well founded. In particular, Plaintiff repeatedly alleges that its copyright and trademark rights are violated by *both* the BRATZ and "Best Friends" product lines in its Second Amended Complaint. See Doc. No. 113 at ¶¶ 43, 44, 51, 58, 67, and 70. Notably, Defendants have not moved to strike any of Plaintiff's allegations with regard to "Best Friends." As a result, documents and information related to "Best Friends" or "4-Ever Best Friends" are therefore appropriate for discovery at this time. Accordingly, the Court finds that Defendants' *domestic* financial information related to "Best Friends" or "4-Ever Best Friends" is relevant, and therefore grants Plaintiff's motion to compel.

### 3. "Intent" Documents / Cease and Desist Letters

Plaintiff maintains that documents and information related to Defendants' intent to infringe the intellectual property of others is not only relevant to the claims Plaintiff has alleged against Defendants, but also is admissible under Federal Rules of Evidence 404(b) and 405(a)-(b). Plf's Mem. at 9, 12. In its Reply, Plaintiff insists that Defendants produce all, and not merely BRATZ-related, cease and desist letters, claiming that such documents may support a "habit or grand plan or scheme in massively defrauding others." Plf's Reply at 7. Moreover, Plaintiff states that such letters may also be relevant

as admissions against interest regarding Defendants' articulation of trade dress, priority, due diligence, and intellectual property rights in general. Id.

Defendants argue that Plaintiff's motion to compel cease and desist letters and to disclose all facts related to any prior allegations of infringement should be denied for two reasons. First, Defendants claim that such information is irrelevant and unlikely to lead to the discovery of admissible evidence. Defs' Opp. at 12. In support, Defendants hypothesize that Plaintiff intends to use such information to argue at trial that Defendants must be infringing Plaintiff's intellectual property because third parties have accused Defendants of infringement. Id. at 13. While noting that such an argument is prohibited by Federal Rule of Evidence 404(b),[7] Defendants acknowledge that evidence admissible for this purpose may be discoverable if determined to be relevant. Id. Defendants maintain, however, that Plaintiff has offered no plausible chain of inferences to show how this information would lead to admissible evidence, and as such, declares that Plaintiff's motion should be denied. Id. Second, Defendants insist that Plaintiff's motion is untimely. Id. Defendants underline that while the issues presented in the instant motion were ripe for briefing by late July 2005, Plaintiff inexplicably waited nearly four months before filing. Id. at 16-17; see also Kreusser Decl. at Ex. A. In conclusion, Defendants also request that this Court exercise its inherent power to sanction Plaintiff for this alleged violation of the Scheduling Order. Defs' Opp. at 17.

---

[7] Federal Rule of Evidence 404(b) provides that "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to show action in conformity therewith." Fed. R. Evid. 404(b).

Defendants substantive arguments are well taken. Plaintiff's discovery request seeks all documents "relating to any allegation or claim that [Defendants] infringed the intellectual property rights of any [p]erson, including any informal threats or allegations, as well as any and all formal proceedings, e.g., mediations, arbitrations or lawsuits." See Kreusser Decl. at Ex. B. Similarly, at least one of the disputed interrogatories[8] seeks all facts relating to "any formal or informal statement, allegation, claim, and/or threat ever made against [Defendants] which asserted or purported to assert that [Defendants] infringed the intellectual property rights of any person." See id. at Ex. C. Such requests are decidedly overbroad, and could have easily been crafted to solicit similar documents and information both relevant and related to the product lines directly at issue. As written, Defendants would be obligated to produce any and all documents and information lodged against them by third parties related to any and all

---

[8] Plaintiff also seeks from Defendants a supplemental response to Interrogatory 15, which calls for the identification of all facts known to Defendants relating to "the commercial use of any Person (other than [Defendants]) in any context of any of the terms or marks BRATS, SPOILED BRAT, SPOILED BRATS, BRATZ, SPOILED BRATZ, BRATS PACK, BRATZ PACK, INTERNATIONAL BRATS, and/or INTERNATIONAL BRATZ prior to 2003." See Kreusser Decl. at Ex. C. According to Defendants, the commercial use of at least some of these slogans and phrases is both widespread and publicly available. Nevertheless, Defendants claim that they have produced "an abundant volume" of documents evidencing third party use of such slogans and phrases, and as such, maintains that there exists no remaining dispute with regard to this discovery request. For its part, Plaintiff fails to address whether Defendants have in fact produced this information. Notably, the majority of Plaintiff's arguments regarding evidence of Defendants' intent to infringe is directed to the information and documents sought in Interrogatory 17 and Request for Production 21. Given Plaintiff's silence on this issue and Defendants' representations that the dispute has been resolved, this Court therefore denies Plaintiff's motion with regard to Interrogatory 15.

of their products, regardless of the merits of the allegation. Because Plaintiff has alleged multiple claims against Defendants regarding only a few distinct product lines, such wide-sweeping requests are unsupportable. In addition, no matter how adamant Plaintiff is that such cease and desist letters could evidence an intent, grand plan, or scheme by Defendants to defraud others, Plaintiff has not provided any facts supporting its allegations.[9] See Rivera v. NIBCO, Inc., 364 F.3d 1057, 1072 (9th Cir. 2004) (noting generally that district courts "need not condone the use of discovery to engage in 'fishing expedition[s]'"). Moreover, a cease and desist letter sent to Defendants by a third party has little, if any, relevance to the issues involved in this case. At bottom, the Court finds that any documents and information other than those directly related to the BRATZ, "Best Friends," or "4-Ever Best Friends" product lines are irrelevant. As such, Plaintiff's motion to compel any such documents and information unrelated to BRATZ, "Best Friends," or "4-Ever Best Friends" is denied.

### 4. Southern California County Fair Attendance

In this final discovery request, Plaintiff seeks identification of all employees and their family members who attended county fairs in Southern California within the past ten years. Plf's Mem. at 13-14.

---

[9] Moreover, the Court notes that Federal Rule of Evidence 404(b)'s "intent" exception applies only where "(1) the evidence tends to prove a material element of the offense charged, (2) the prior act is not too remote in time, (3) the evidence is sufficient to support a finding that the defendant committed the other act, and (4) (in cases where knowledge and intent are at issue) the act is similar to the offense charged." United States v. Plancarte-Alvarez, 366 F.3d 1058, 1062-63 (9th Cir. 2004)). As a result, regardless of whether Plaintiff anticipates arguing that such cease and desist letters, if any, establish in Defendants an intent to infringe or defraud, it is suspect whether Plaintiff could even successfully claim that such documents and information are admissible to prove intent under this evidentiary rule.

Plaintiff claims that such information is relevant to, among other things, intent, secondary meaning, market penetration, likelihood of confusion, and defamation, all of which Plaintiff contends are either directly or potentially at issue in this case. Id.

Defendants oppose the discovery Plaintiff seeks on both procedural and substantive grounds. First, Defendants reiterate that this discovery dispute arose as early as July 2005, and as such, is untimely. Defs' Opp. at 17; see also Kreusser Decl. at Ex. A. Second, Defendants contend that they have already substantively responded to the discovery request at issue, and have therefore provided all information even arguably relevant and discoverable.[10] Defs' Opp. at 17; see also Ambrosini Decl. at Ex. A.

As with the requested cease and desist letters, this discovery request is undeniably overbroad. For example, Defendants correctly underline that as drafted, the interrogatory requires that Defendants interview all current employees to determine if they have attended a county fair in Southern California within the past ten years, irrespective of whether such employees either had anything to do with the BRATZ product line or ever had contact with an employee who did. Moreover, Plaintiff's request equally requires that Defendants include in this interview process the family members of all their employees,

---

[10] Specifically, Defendants explain that in responding to Plaintiff's interrogatory, they identified those individuals that either (1) had potential creative input into the creation, design, or development of Defendants' first BRATZ dolls and BRATZ mark, or (2) had decision-making authority over their creation, design, or development, and then interviewed each of these employees to determine which, if any, had either attended a Southern California fair or had learned of Plaintiff or its works from another. Defs' Opp. at 18. Defendants state that the results of these interviews were provided to Plaintiff in a supplemental interrogatory response. Id.; see also Ambrosini Decl. at Ex. A.

presumably without limitation. Such a request is the definition of overbreadth. Additionally, to the extent that Defendants did in fact provide Plaintiff with a response, albeit limited to those employees with creative input or decision-making authority over the creation and development of the BRATZ products and the BRATZ mark, this Court finds that Defendants have more than met their discovery obligations with regard to this interrogatory. As a result, this Court denies Plaintiff's motion to compel a supplemental response to this discovery request.

### 5. Timeliness

As noted above, Defendants argue that Plaintiff's motion to compel cease and desist letters and information regarding the county fair attendance of their employees must be denied as untimely. In support, Defendants highlight that despite the fact that Plaintiff clearly articulated its intent to move to compel such documents and information as early as July 2005, it inexplicably delayed filing its motion for nearly four months. According to Defendants, this failure to file its motion in a timely manner constitutes yet another direct violation of this Court's Scheduling Order.[11] Plaintiff's moving papers, however, include conflicting assertions as to the actual date on which these particular discovery disputes actually arose; Plaintiff's opening brief attaches at least one document, dated July 23, 2005, which discusses the discovery requests at issue in the instant motion and informs Defendants that a motion to compel with be filed "next week," see Kreusser Decl.

---

[11] The Scheduling Order specifies that "all disputes concerning discovery shall be brought to the attention of the Magistrate Judge no later than thirty (30) days following the date upon which the event giving rise to the dispute occurred." See Doc. No. 136 at 3.

at Ex. A, whereas its Reply memorandum indicates that counsel did not determine that the Court's intervention would be necessary until approximately October 10, 2005. Plf's Reply at 8.

Based on the documents submitted in conjunction with both Plaintiff's and Defendants' briefing, and due to the representations set forth therein, the issues presented in the instant discovery dispute undeniably arose as early as July 2005. However, Plaintiff delayed filing the instant motion to compel for nearly four months in violation of the applicable Scheduling Order. As a result, the Court finds that Plaintiff's motion to compel is indeed untimely. Nevertheless, in light of the significant disruption caused by the withdrawal of Plaintiff's former counsel, the substitution of new counsel, and the ongoing meet and confer efforts of Plaintiff's new counsel, the Court finds it inappropriate to deny Plaintiff's motion to compel on untimeliness grounds.

### B. Defendants' Request for Sanctions

As indicated in two recent Orders, federal courts may impose sanctions on parties failing to comply with court orders under both the Federal and Local Rules. For example, where a party fails to obey a scheduling or pretrial order, Rule 16(f) enables the court to "make such orders with regard thereto as are just," including orders imposing sanctions in the form of "reasonable expenses incurred because of any noncompliance." Fed. R. Civ. P. 16(f). Moreover, Civil Local Rule 83.1(a) endows the court with broad discretion to impose sanctions for a party's failure to comply with not only the Federal and Local Rules, but also with court orders. See CivLR 83.1(a). In general, sanctions are appropriate in response to "willful disobedience of a court order . . . or when the losing party has acted in bad faith, vexatiously,

wantonly, or for oppressive reasons." Fink v. Gomez, 239 F.3d 989, 991 (9th Cir. 2001). In addition to willfulness, when a court order is violated, a district court that decides to impose sanctions must also consider the risk of prejudice to the complying party and the availability of less drastic sanctions. See Commodity Futures Trading Comm'n v. Noble Metals, 67 F.3d 766, 771 (9th Cir. 1995), cert. denied, 519 U.S. 815 (1996) (referencing Adriana Int'l Corp. v. Thoeren, 913 F.2d 1406, 1412 (9th Cir. 1990), cert. denied, 498 U.S. 1109 (1991)).

In this case, Defendants once again request that this Court impose sanctions for Plaintiff's alleged violation of the Scheduling Order, this time due to Plaintiff's failure to bring the instant motion in a timely manner. As noted above, this Court finds that the instant motion is in fact untimely. Moreover, as this Court's recent Order denying Defendants' motion for sanctions explained, Plaintiff recently has, at least once, willfully violated the applicable Scheduling Order. See Doc. No. 158 at 6. In addition, having reviewed Plaintiff's opening and reply briefs in support of the instant motion to compel, the haphazard nature of the arguments presented, the consistent lack of analysis or response to arguments advanced by Defendants, and the presence of possible misrepresentations to the Court as to the status of discovery, can all be cited in support of this Court's imposition of sanctions.

Notwithstanding these considerations, Defendants have not articulated any way in which Plaintiff's questionable conduct has caused them to suffer prejudice. Indeed, for every argument Defendants offer in support of Plaintiff's alleged bad faith or misconduct, Plaintiff presents a counter-argument of the same sort. At bottom, a review of the parties' recent briefing, declarations, and documents submitted concurrently therewith, as well as the Court's own recollection of the

Received at: 10:54AM, 12/27/2005

MAJOR
DEC-27-05   09:35AM   FROM-USDS SODIST FLFIVE                    T-387  P.002/002  F-598
p.2

1 parties' behavior, confirms that there has been a long history of game
2 playing on both sides during the course of this entire litigation.
3 Consequently, this Court will follow its recent rulings with regard to
4 sanctions, and therefore denies Defendants' request.

## CONCLUSION

6 Based on the Court's review of the briefing submitted, and for the
7 foregoing reasons, Plaintiff's Motion to Compel is hereby GRANTED IN
8 PART and DENIED IN PART. Within seven (7) days of service of this
9 Order, and subject to the limitations imposed herein with regard to
10 particular discovery requests, Defendants shall produce documents
11 responsive to Document Request Numbers 8, 9, and 21, and shall provide
12 responses and/or supplemental responses to Interrogatory 17. Moreover,
13 Defendants' Objections to and Motion to Strike Plaintiff's Evidence
14 Submitted with Plaintiff's Reply in support of Plaintiff's Motion to
15 Compel is hereby GRANTED.

16 IT IS SO ORDERED.

18 Dated: 12/27/05

BARBARA L. MAJOR
United States Magistrate Judge

20 COPY TO:
21 HONORABLE NAPOLEON A. JONES
U.S. DISTRICT JUDGE
22
ALL COUNSEL

-19-

04cv1035-J (BLM)